Arthur A. Beaudry v. Commissioner.
Beaudry v. Commissioner
Docket No. 109352.
United States Tax Court
1943 Tax Ct. Memo LEXIS 388; 1 T.C.M. (CCH) 838; T.C.M. (RIA) 43156; March 25, 1943
*388 Aaron Holman, Esq., for the petitioner. Arthur Groman, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in 1938 and 1939 income tax as follows: Deficiency
Penalty
1938
$3,125.05
$156.25
1939
81.02
4.05
Also involved is a deficiency of $283.47 and a penalty of $14.17 for 1937. Findings of Fact The taxpayer is an individual residing at 59 East 66th Street, New York, New York, and filed returns on a cash basis for 1937, 1938 and 1939, in the Second District, New York. Since 1925, he has engaged in the general practice of law. 1, 2, 3. Taxpayer had two law libraries, one containing approximately 3,000 volumes in his home, and the other containing approximately 2,000 in his office. Each library consisted of reports, statutes, digests, text books and encyclopedias. All of the reports are buckram bound. The home library occupies the third floor of petitioner's five-story, nine-room residence, and is in one room, 25 by 20 feet, and an annex 15 by 10 feet. The shelving is 10 feet high and 25 feet long on two sides of the room, and 15 feet long on the third side. Other members of petitioner's family *389 never use those rooms. They are used entirely for professional purposes, are sometimes used by clients, and often by associate attorneys. Petitioner uses the home library a great deal. In 1938, the library shelves, having warped and collapsed, were rebuilt at a cost of $748.50. In 1937, petitioner had spent $1,800 to install this shelving and related cabinet work. All hardware was bronze. Other 1937 expenses in equipping the library, other than for books, brought the total to $3,500 for that year. In 1938, the following items were installed: Rug, $945; radio, $80 *; drapes and curtains, $380; chair, $185; 3 lamps and shades, $169.50; cocktail table, $63.50 *; table, $29.50; stand $32 *; rug outside library, $410 *; clock, $250 *; painting, $689.50 *; "W. H. Jackson", $158 *; and "Work by Mat.", $156. * The furnishings of the office consisted of bookcases, steel files, stationery cabinets, desks and benches. A reasonable allowance for exhaustion, wear and tear, and obsolescence of the books in the law libraries is at the rate of 5 per cent of their cost, and of the furniture, fixtures and equipment, except those marked with an asterisk, is at the rate of 10 per cent of cost. The items *390 marked with an asterisk may not be regarded as property used in the business or subject to exhaustion. 4. Taxpayer estimates his daily incidental business expense at an average of $2 daily, or $600 a year, covering current expenses traveling to and between courts, telephone calls lunches for clients and witnesses, etc. Petitioner spent $1,000 in 1937 on a trip to Europe. He bought souvenirs for "clients and so forth". One such present costing $5 or $6 subsequently brought him a client who "netted" him $25 or $50. He entertained in his home with the "idea of meeting people and keeping in touch with people for the sake of obtaining business". In 1937, his estimate of the cost of home entertainment was $400- $600. In 1938, the estimated cost of such home entertainment increased to $2,000 as he had moved into his new home and all his important clients and friends wished to see it because it was considered "more or less of a mansion". Extra servants and sometimes musicians were employed. In 1939, the estimated amount of such home entertainment was reduced to $750about. In 1937 and 1938, petitioner was cultivating the dye industry, made it a point to attend their creditors' meetings, *391 and meet the men and entertain them. As one of the membership committee, he had to meet and entertain prospective members of the Lawyers Association. This required outside entertainment three or four times weekly, the cost of which petitioner estimated at $30 a week for half the year 1937 ( $750), for all the year 1938 ($1,500), and at $1,000 to $1,200 in 1939. 5. In 1929, the taxpayer paid $7,500 for 65 shares of common and 10 shares of preferred stock in the Caledonia Holding Corporation and still owns them. The corporation had an authorized capital of $120,000 consisting of 300 preferred shares and 900 common. It owned and operated four parcels of improved real estate located in the Harlem district of New York City, which were reflected on its books as of January 1, 1930, as follows: Book Value
Mortgages
Equity
232 W. 142nd St
$66,062.40
$51,500.01
$14,562.39
234 W. 142nd St.
65,067.40
48,625.00
16,442.40
53-55 W. 135th St
67,000.00
46,400.00
20,600.00
170 W. 141st St
32,000.00
24,400.00
7,600.00
$230,129.80
$170,925.01
$59,204.79
In 1933, the corporation lost the two parcels on 142nd Street by foreclosure and the taxpayer was aware of that fact *392 in 1933. It still owns the 135th and 141st Street parcels. The mortgages thereon had, as of December 31, 1937, been reduced to $43,720, a reduction of $2,680, and to $24,200, a reduction of $200. The fair market value in 1932 of these two parcels was $35,000 for the 135th Street parcel and $17,000 for the 141st Street parcel. These values have not changed since. The corporation had no equity in these parcels after 1932. A consolidated operating statement and balance sheet of the corporation showed the following: Gross
Total
Net
Receipts
Expenses
Loss
1933
$12,179.18
$13,098.46
$ 919.28
1934
12,608.87
12,775.78
166.91
1935
12,148.29
12,532.41
384.12
1936
11,964.27
13,253.64
1,289.37
1937
13,111.72
13,301.34
189.62
1938
13,095.31
14,844.92
1,749.61
1939
13,309.15
15,266.28
1,957.13
1940
13,765.81
16,449.14
2,683.33
The taxpayer received no dividends on his stock after 1930. In 1932, the taxpayer was told by the president of the corporation that it was in need of money. The taxpayer and another sharesholder in 1932 loaned the corporation $4,400, his portion being $2,750. A blanket mortgage of $6,000, which was a third mortgage on three *393 of the parcels and a fourth on the other, was given as security for the loan. Neither principal nor interest was paid on this loan. 6. Petitioner's sister, in 1937, was 47 and had seven children, two over 18, one of whom earned $12 a week and helped support the family. She was not in good health. Her husband was a boiler maker. While working in 1936, he fractured his skull and became mentally affected. In 1937, he lost a finger and received over $900 as compensation. In 1937, he also received $1,375 for settlement for his previous accident. Petitioner held a mortgage on his sister's home, and this $1,375 was given him to apply on the mortgage. The husband went under care of mental experts in 1938 and died in a state hospital in May, 1939. Taxpayer gave his sister $25 weekly in 1937, 1938, and 1939, and other amounts for food, medicine, coal, furniture, etc., for the family. 7. Petitioner, in 1938, being on a cash basis, owed interest of $96.89 on an insurance policy loan and secured a new loan in which the amount of interest due was added to the principal. 8. No part of the deficiency is due to negligence or disregard of the applicable regulations. Opinion STERNHAGEN, Judge: 1. *394 The Commissioner has disallowed a deduction for depreciation of the books, furniture and equipment in the taxpayer's professional library in his residence. The taxpayer is entitled to a deduction of a reasonable allowance for exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. Section 23 (1), Revenue Acts of 1936 and 1938. The evidence shows that the library was used in the business. Its cost or maintenance (except the marked items) was not a personal, living, or family expense (Section 24 (a) (1)). The Commissioner has tacitly admitted as much in making an allowance for depreciation of the books. The argument to support the disallowance of depreciation on the furniture and equipment is that their style and cost indicate that they are too luxurious to be business property. This only affects the reasonableness of the allowance, for the statutory deduction is not limited to only those types of furniture as are commonly recognized as business or office furniture. The part of the cost, however, which is beyond reasonable necessity, could not be used as a basis for depreciation for it would have no reasonable relation *395 to the business. The outermost line of reasonableness is, however, not easy to define. Much of the furniture and equipment in petitioner's home library is not too ornate and luxurious to be the basis for a reasonable allowance for depreciation. The following items are proper subjects of business depreciation, computed on the basis of their cost: Rug
$945.00
Drapes and curtains
380.00
Chair
185.00
Lamps
169.50
Table
29.50 The remaining items listed which we have designated by an asterisk are not properly the subject of business exhaustion, wear and tear, or obsolescence. 2. The Commissioner determined that a reasonable allowance for depreciation of the books in the home library and the books and furniture and equipment in the office was at a 5 per cent rate. We cannot say from the evidence as to the books that this is not a reasonable allowance, or that their probable useful composite life was less than twenty years. The opinions of petitioner's witness and his estimates of probable useful life do not provide an authoritative standard for a composite depreciation allowance different from that used by the Commissioner, and the evidence does not contain facts, as distinguished *396 from opinion, requiring a different rate. As to the furnishings, furniture and equipment, however, there is no reason why the rate should be fixed lower than the 10 per cent usually applied and which has been recognized for the property of this petitioner in previous years. 3. The Commissioner determined that the $748.50 spent in 1938 to improve the shelves in the library was not an ordinary and necessary expense and disallowed the deduction. The evidence supports this and shows that the expenditure was for an improvement and not a mere repair. The disallowance of deduction is sustained. 4. The taxpayer claims deductions of $2,000 in 1937, $4,100 for 1938 and $1,500 for 1939, as ordinary and necessary business expenses. The Commissioner, after considering the deductions taken, allowed $1,500 for 1937, $2,600 for 1938, and $1,200 for 1939, and disallowed the rest "for lack of substantiation". The taxpayer has undertaken to prove the entire deductible totals, but we think he has failed. Clearly, some of the items, such, for example, as a trip to Europe and the expenses of home entertaining, are in themselves not deductible. Others appear to be the cost of goodwill and not current *397 expenses. Although there are some, for example, the cost of frequent transportation to court, which may be classified as ordinary business expenses and may therefore be deductible, these may have been included within the Commissioner's allowance. Upon the evidence, therefore, the Commissioner's disallowance is sustained. 5. The taxpayer claims deductions in 1938 for loss sustained in his investment in Caledonia shares and for a debt of Caledonia ascertained to be worthless and charged off. The Commissioner disallowed both deductions on the ground that the shares and the debt were not worthless in the taxable year and were not then ascertained to be so. The evidence does not establish error in this disallowance. Such evidence as there is tends to indicate that the condition of the Caledonia Corporation was hopeless before 1938, that its shares were without any value, and that there was reason to believe that the debt would never be paid. The petitioner was a substantial shareholder and is in no position to urge that the worthlessness of the debt was unknown to him. He knew that the corporation, organized in 1929, had consistently had net losses from 1933, that two of its four properties *398 had been lost on foreclosure, that the value of the remaining properties was less than the mortgages, and that his was a third or fourth mortgage. The evidence as to the Phillips property is not clear enough to be significant. There is no evidence which would support an affirmative finding that the condition of the corporation had been improving or could reasonably be expected to improve. This disallowance as to both items of deduction is sustained. 6. The petitioner took credits in each year for dependency of the members of his sister's family, except the adult children. The evidence shows that the sister and her invalid husband and their minor children derived their chief support from the petitioner in the three taxable years, and the dependency credit was therefore improperly disallowed. The taxpayer is entitled to the entire dependency credit claimed for each year. Cf. I.T. 3226, 1938-2 C.B., p. 148. 7. Prior to the tax year, petitioner had borrowed on his insurance policy, and the interest of $96.89 was unpaid. In the tax year, the insurance company made him a new loan for the principal sum plus the amount of interest due and unpaid. The Commissioner *399 disallowed a deduction of interest added to the new loan because petitioner was on a cash basis and the amount was not paid. Upon the authority of L. B. Hirsch, 42 B.T.A. 566, affirmed on other points, 124 Fed. (2d) 24; Albert J. Alsberg, 42 B.T.A. 61; Nina Cornelia Prime, Executrix, 39 B.T.A. 487, the disallowance of the deduction is sustained. 8. The respondent has added 5 per cent to the deficiency on the ground that some part of the deficiency is due to negligence or disregard of regulations. Although the returns were in error, it is plain from the evidence that the errors were not due to negligence or disregard of regulations. The penalties should therefore not be added. The net result of this decision is that petitioner is entitled to depreciation of 5 per cent per year on the books and 10 per cent on the enumerated furnishings of the library, may not deduct the cost of shelving, is not entitled to a greater deduction than that allowed by the Commissioner for business expenses, is not entitled to deductions for loss or bad debts in respect of the share *400 or loan to the Caledonia Corporation, is entitled to the dependency credits claimed in respect of his sister and her family, is not entitled to a deduction for interest on the insurance loan, and is not liable for any percentage addition for negligence. Decision will be entered under Rule 50.